*Municipal Court of the City of Boston*

No. 366

**DOROTHY WALLACE**

v.

**FOLSOM'S MARKET, INC.**

(May 27 — September 28, 1960)

*Present:* Gillen, J. (Presiding), Shamon & Morrissey, JJ.

Case tried to *Lewiton, J.*

*Gillen, J.* This is an action of tort in which the plaintiff seeks to recover damages as a result of a fall on the sidewalk adjoining the premises of the defendant.

Count 1 of the declaration sounds in negligence, and the trial judge found for the

plaintiff. On count 2, the trial judge found for the defendant; this count is for maintaining a nuisance.

Photographs of the locus were introduced in evidence at the trial and witnesses indicated by marks on the photographs the precise area where the plaintiff fell. The lease between the owner of the property and the defendant was also introduced in evidence. The photographs and the lease are incorporated by reference according to the report.

*At the trial there was other evidence tending to show the following facts:*

At about midnight on November 1, 1958 the plaintiff, Dorothy Wallace, a widow, 53 years old, of 604 Massachusetts Ave., Boston, in the company of her girl friend, Marion Ford of 17 Warwick Street, Boston, was walking down Northampton Street towards Louis Lounge, located at the corner of Northampton and Washington Streets. She had been at her girl friend's house and was on her way to Louis' to catch the late floor show there. It was dark on Northampton St. and the area was poorly lighted. She was walking in an easterly direction and there were several people in front of her. She caught her foot in a piece of iron and fell face down. Her girl friend was shaking her and calling her name. She was taken to the Boston City Hospital by Marion Ford. She suffered a cut over her eye in the fall and at the hospital they washed her face and took stitches in her eye. The accident happened on

a Saturday night. She observed where she fell. She observed the situation right after the accident. She also returned to the spot the next day. When questioned about the condition of the place where she fell she said:

"There is this metal on the sidewalk and where it comes up there is framework around the building but the bar went up."

The plaintiff further testified that she tripped over a piece of iron, caught her foot on it and fell on metal on the sidewalk. She described how it extended over the level of the sidewalk indicating about 2 inches down to about 1 inch at its lowest point. She identified Exhibits 7a, b and c as fair representations of the area where she fell. She testified that she did not feel her foot go down into a lower level before falling or tripping; there was a marked depression in the sidewalk around the place where she fell. She could not say how deep the hole was. She first told her lawyer, November 3rd or 4th, that her fall had been caused by tripping over the iron. Her answers to interrogatories which were filed at the end of August, 1959, state that she was caused to fall by the defective condition of the cement around the top of the elevator. At the trial she testified that the hole in the sidewalk may have had something to do with her fall, but that she felt her foot catch against the iron bar. The hole in the sidewalk may have been 1 inch deep.

The plaintiff admitted making the following statement on August 27, 1959 in answer

to the following interrogatory put to her by the defendant.

Int. 6. Please describe, as carefully as possible, how the accident occurred, stating the events in the order in which they took place.

Ans. 6. I was walking on the sidewalk when I was caused to trip due to the defective condition of the cement around the top of the elevator which raises from the sidewalk.

She remembers her foot going down in a hole prior to her fall. There was a small depression in the sidewalk next to the iron frame, but it wasn't deep.

Marion Ford of 17 Warwick Street, Boston, was walking behind the plaintiff on Northampton Street on her way to the cafe with the plaintiff. Neither was escorted. They had been to her home and it was about seven blocks distance from there to the cafe. She saw the accident. She observed the plaintiff trip over a piece of metal frame on a dumbwaiter in the sidewalk. Her foot was caught and the plaintiff's shoe was off and remained there following the fall. Just part of it stuck out. From the beginning of one corner it was raised. She saw the plaintiff pitch forward and could see where her foot was when she had fallen. She inspected the piece of iron; it was old and rusty. The photographs which were already introduced were shown to the witness who testified that they were fair representations of the area where the plaintiff fell. Three additional photographs, later marked Exhibits 8, 9 and 10, were also shown

the witness who testified that they were fair representations of the place where the plaintiff fell. On Exhibit 8 the witness placed an X as the place where the plaintiff's shoe was after the accident. There was a hole in the sidewalk next to the iron frame. The iron frame projected 1 1/8 inches above the level of the sidewalk at the corner and 1 3/8 inches over the hole in the sidewalk where the plaintiff's foot caught at the time she fell.

She further testified that she saw the plaintiff trip. The plaintiff tripped over a piece of metal frame on the dumbwaiter in the sidewalk; the hole in the sidewalk did not appear as big as indicated in Exhibit 7a; Exhibit 7c looked as though it may be a fair representation but she could not be sure since the accident occurred a year ago. She testified that the metal stuck up about 1 inch above the sidewalk; on the side facing the hole in the sidewalk, the total elevation of the metal above the bottom of the hole was about 1 3/8 inches. On the side which was approached by the plaintiff before she fell, the metal was flat against the sidewalk nearly up to the point where the hole was and at that point the metal was elevated above the sidewalk on Exhibit 10. Mrs. Ford indicated by a line extending across the bulkhead toward the sidewalk, the point at which the metal ceased to be raised above the level of the sidewalk and back flush with it.

Daniel P. McGinley of 64 Ayles Road, Boston, the general manager of the defend-

ant and also a director of the defendant corporation, testified that the bulkhead on the sidewalk of Northampton Street leads into the basement under the defendant market, and that it has never been used by the defendant at any time; that the bulkhead in question was the top of an elevator which was set in the sidewalk on the Northampton Street side of the store and led to the basement of the defendant market; the sidewalk and bulkhead were in good condition in 1956 at the beginning of the term of the lease under which the defendant occupied the premises. The defendant never applied for or had a license for the use of this bulkhead. The defendant made no repairs to the bulkhead up to November 1, 1958, but did have occasion to make repairs thereafter, that it was his duty to inspect the premises as to its condition. There was no inspection of the bulkhead by the defendant from the commencement of the lease in 1956 until such time as repairs were made after November 1, 1958. There was introduced in evidence a lease dated May 2, 1956 in which the defendant was named as tenant and covers the premises adjacent to the sidewalk in which the elevator in question was located. The demised premises include the basement premises and the term of the lease was from July 1, 1956 to June 30, 1971.

Requests for rulings of law were denied. The question of the sufficiency of evidence to warrant a plaintiff finding is raised.

The report contains all the evidence material to the questions reported.

The defendant claims to be aggrieved by the denial of the requests for rulings of law.

We must rely on the photographs to produce information as to the elevator, its construction, its position in the sidewalk and its relation to the store of the defendant by reason of the paucity of evidence that went in at the trial from the witnesses relative to these phases of the case.

Apparently it was an elevator with a flat metal square top that was used to lower merchandise into the basement. It is referred to in the report as a "rising elevator". When not in use it fitted into a square metal frame or border; the top was intended to be flush with the sidewalk when in position after use. It is not clear if the side nearest the building had a metal bar but the absence of this evidence is unimportant in the instant case. Definitely there were three metal bars that the cover fitted into and we are concerned with the corner of the bar that ran from the building toward the street; the bar that the plaintiff contacted as she approached the elevator on the sidewalk.

The photographs show a declivity or hole in the concrete sidewalk adjoining this corner of the metal frame or bar. There is no specific evidence in the report as to the size of this hole other than the reference to its depth. But it is obvious that the shoe of a woman or the greater part of it could fit in the declivity.

One photograph indicates that three quarters of the iron bar or frame we are concerned with is flush with the sidewalk level and there is oral evidence as well to support this fact.

Consequently we face the question did the hole in the sidewalk by reason of its position adjoining the metal bar create a "stub toe" that caused the plaintiff's injury? We think it did.

Without this declivity we do not feel there is evidence that the defendant was negligent in the maintenance of the elevator or its frame at the point indicated as the locus of the fall.

There is no evidence that the elevator or its frame would have protruded above the level of the sidewalk had there been no defect in the sidewalk at this point.

■ In *Farolato v. Springfield Five Cents Savings Bank,* 310 Mass. 806, the court held unless the unsafe condition of the sidewalk results from a wrongful act or omission of the defendant it has no duty to keep a public sidewalk in a reasonably safe condition for the use of travelers.

There was no evidence that the defendant had in any way caused the declivity in the sidewalk. The defendant claimed it had never used the elevator during its occupation of the premises. See *Catino v. Sorrentini,* 288 Mass. 89, at 92.

There was no evidence in the report of the city ordinance governing structures projecting into ways and the rules and regulations relating thereto. See G. L. c. 85, §8. We can-

not say, therefore, that there was any obligation on the part of the defendant to repair any defect in the sidewalk adjoining the "rising elevator".

In *Lucas v. Boston,* 313 Mass. 495, the plaintiff tripped over a water meter cover owned and controlled by the City of Boston. The cover protruded above the sidewalk about 3 inches. The evidence showed that the condition was caused by a washing away of the sidewalk around the water cover and not by any defective condition of the water cover.

The plaintiff had sued at Common Law for a defect in the water cover but the court held there was no recovery as the protrusion of the water cover was caused by the defective condition of the sidewalk and no suit had been brought for recovery under G. L. c. 84.

In the instant case we hold there is no evidence that the plaintiff would have fallen had the sidewalk not been defective.

In *Howe v. Boston,* 311 Mass. 280, the court held the plaintiff in order to recover was required to show by a fair preponderance of the evidence that her injury resulted from a cause for which the defendant was responsible rather than from a cause that it was not.

If, on all the evidence, it is just as reasonable to suppose that the cause was one for which no liability would attach to the defendant as one for which the defendant is liable, then the plaintiff fails to make out a case.

We hold the plaintiff has failed to make out a case.

The order is: *Finding for the plaintiff vacated. Finding to be entered for defendant.*

John Landfield of Boston, for the Plaintiff.
Peter Cole of Boston, for the Defendant.